UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-00364-FDW
(3:19-cr-00394-FDW-DSC-1)

| | |
|---|---|
| ROBERT ALLEN McCLINTON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.    BACKGROUND**

On September 5, 2019, Charlotte-Mecklenburg Police Officer Kevin Jackson initiated a traffic stop of Robert Allen McClinton ("Petitioner") after he was unable to verify the registration information for Petitioner's car. [CR Doc. 43 at ¶ 8: Presentence Investigation Report (PSR)]. Petitioner pulled over at a gas station. [Id.]. However, when Officer Jackson approached Petitioner's car, Petitioner drove off at a high rate of speed, almost hitting Jackson as he sped away. [Id. at ¶ 9]. Petitioner sped through a residential neighborhood, eventually losing control of his car and colliding head on with a tree. [Id.].

---

[1] Citations to the record herein contain the relevant document number referenced preceded by the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:23-cv-00364-FDW and the letters "CR," denoting that the document is listed on the docket in criminal case file number 3:19-cr-00394-FDW-DSC-1.

Officer Mack arrived at the scene of the crash and found the driver's side door pinned and Petitioner trapped in the driver's seat. [Id. at ¶ 10; Doc. 57 at 77]. Officer Jackson arrived at the scene, and, after the car caught fire, he pulled Petitioner out through the car's passenger side door. [Id.]. Officer Jackson laid Petitioner on the road and handcuffed him. [Id.]. Officer Jackson searched Petitioner's pants, finding cash and a torn baggie containing a white, powdery substance. [Id. at ¶ 11]. Emergency medical personnel arrived and rendered aid to Petitioner. They located more cash in Petitioner's sock and handed it to officers. [Id.]. Officer Mack searched Petitioner's car, finding two baggies of crack cocaine, weighing a total of 3.76 grams. [Id. at ¶ 13]. The total amount of cash found on Petitioner was $433.00. [Id. at ¶ 14].

Because Petitioner was under arrest, Officer Jackson rode with him in the ambulance to the hospital, where Petitioner was considered a trauma patient based on the medic's assessment at the scene. [Id. at ¶ 12; CR Doc. 57 at 40-41: Trial Tr.]. When trauma patients arrive at the hospital, the involved medical personnel have proscribed, pre-assigned roles in assessing and treating the patient. [CR Doc. 57 at 41]. Medical personnel first perform a head-to-toe assessment, which begins with the patient lying on his back. Consistent with this protocol, Petitioner assessment began with him lying on his back. Nothing remarkable was found. [Id. at 42]. Because Petitioner was in a C-spine collar, the medical providers then "logrolled" Petitioner to his stomach to examine Petitioner's backside. [Id. at 42, 46]. The backside head-to-toe assessment includes a "rectal tone check," which involves a doctor "stick[ing] their finger in the rectum area to see if it squeezes around the [finger]. Typically if you get that contracture, there's not a spinal cord injury." [Id. at 47]. When the doctor performed a routine rectal tone check to assess Petitioner for spinal cord injuries, the doctor encountered and "fairly eas[ily]" removed a "baggie with the large white

2

substance" from Petitioner's "butt-cheeks."[2]  [Id. at 42-43].  The baggie with the white substance in it was placed in an evidence bag and given to Officer Jackson, who had been stationed at the trauma bay doors a few feet from Petitioner during the assessment.  [Id. at 43-45, 47-48, 110].  The baggie contained three smaller baggies.  [Id. at 110-11].  One baggie contained 26.59 grams of crack cocaine, the second contained 13.52 grams of cocaine, and the third 1.51 grams of cocaine.  [CR Doc. 43 at ¶ 12].  Officer Jackson did not participate in Petitioner's medical treatment.  [CR Doc. 57 at ¶ 108-09].  In total, 30.35 grams of crack cocaine and 15.03 grams of cocaine were seized during the investigation.  [Id. at ¶¶ 15-16].

On December 19, 2019, Petitioner was charged in a Bill of Indictment with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count One) and one count of possession with intent to distribute 28 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Two).  [CR Doc. 1: Bill of Indictment].  The Government filed an Information pursuant to 21 U.S.C. § 851 noticing Petitioner's prior felony drug conviction under 21 U.S.C. § 841 within 15 years of the instant offense.  [CR Doc. 4].  The Court appointed attorney Richard Beam to represent Petitioner. [1/14/2020 Docket Entry].  After two motions for inquiry of counsel, the Court allowed Beam to withdraw and appointed David Burgess to represent Petitioner.  [CR Docs. 16, 23; 6/29/2020 & 6/30/2020 Docket Entries].  Three months later, Burgess filed a motion for inquiry of counsel and to withdraw.  [CR Docs. 27, 28].  The Court allowed Burgess to withdraw and appointed Darrin Jordan to represent Petitioner.  [9/25/2020 & 9/28/2020 Docket Entries].

---

[2] In an Affidavit submitted with his motion to vacate, Petitioner claims that Officer Jackson told the EMTs in the ambulance and the doctor later in the emergency room area to "[m]ake sure to check [Petitioner's] rectum."  [Doc. 1-2 at ¶¶ 7, 11].

3

Petitioner rejected a plea offer and proceeded to trial in May 2021. [CR Doc. 57 at 10-19]. At trial, the Government presented evidence from police officers, including Officers Jackson and Mack, and Cynthia Laughlin, a nurse who was assigned to Plaintiff's bedside at the hospital during his trauma assessment, to describe the events of September 5, 2019 consistent with the recitation above. [See CR Docs. 57 & 58: Trial Trs.]. The jury found Petitioner guilty of both counts. [CR Doc. 41: Jury Verdict]. Before sentencing, a probation officer prepared a PSR calculating Petitioner's total offense level as 26, which included a two-level enhancement for reckless endangerment, and his criminal history category as VI. [CR Doc. 43 at ¶¶ 27, 31, 46]. The Guidelines advised a range of 120 to 150 months in prison [Id. at ¶ 95] and this Court sentenced Petitioner to a term of imprisonment of 135 months [CR Doc. 47: Judgment].

Petitioner appealed. He argued that the search of his person at the hospital violated the Fourth Amendment and that "all but 3.76 grams of 'crack cocaine'" should be suppressed. Appellant's Br., No. 21-4618 (4th Cir. Apr. 7, 2022), ECF No. 19 at 13. On the Government's motion, the Fourth Circuit dismissed Petitioner's appeal because Petitioner waived the right to challenge the admission of this evidence by not moving to suppress it before this Court. Id., ECF No. 30.

On June 16, 2023, Petitioner filed the instant motion to vacate pursuant to 28 U.S.C. § 2255. [CV Doc. 1]. Petitioner argues that he received ineffective assistance of trial counsel because his three consecutively appointed attorneys failed to provide Petitioner "competent representation." That is, he argues that all three attorneys refused to move to suppress evidence of the drugs found in or around Petitioner's rectal area; Attorney Beam advised Petitioner that he was a career offender; and Attorneys Burgess and Jordan advised Petitioner that if he "pursued a suppression hearing he would be subjected to further punishments and/or tampering with evidence

4

charges." [CV Doc. 1-1; CV Doc. 1 at 4-5]. For relief, Petitioner asks for his conviction to be vacated for retrial, an evidentiary hearing, and appointment of counsel. [CV Doc. 1 at 12]. The Government responded [CV Doc. 4] and Petitioner did not reply.

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). It is not sufficient to show "'that the errors had some conceivable effect on the

outcome of the proceeding.'" Harrington v. Richter, 562 U.S. 86, 104, 111-12 (2011) (quoting Strickland, 466 U.S. at 693). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Petitioner vaguely claims that he received ineffective assistance of counsel because his three appointed attorneys failed to provide "competent representation." As to Attorney Beam, Petitioner contends that Beam mistakenly told him that he was a career offender, and that Petitioner contacted his old attorney to confirm that he was not. [Doc. 1-2 at ¶¶ 25-27]. Even if true that Beam incorrectly assessed Petitioner's career offender status, Petitioner has shown no prejudice from this alleged error. As such, this claim fails and will be dismissed.

Next, Petitioner claims that he told Attorney Burgess to "[e]ither get [him] a plea to possession, a suppression hearing or [they] go to trial." [Doc. 1-2 at ¶ 35]. Petitioner contends that Burgess told him that if he were to get a suppression hearing, Petitioner would "get more time for tampering with evidence," and that, even if the drugs found at the hospital were suppressed, they would still be considered relevant conduct at sentencing. [Doc. 1-2 at ¶ 36]. Less than three months after he was appointed, the Court granted Burgess' motion to withdraw. As soon as Petitioner's next attorney, Darrin Jordan, was appointed, Petitioner also told him that he "want[ed] a plea to possession or a suppression hearing and/or trial." [Doc. 1-2 at ¶ 43]. Petitioner asserts that Attorney Jordan told him that a suppression hearing may result in Petitioner getting more time. [Doc. 1-2 at ¶ 44]. Petitioner states that Jordan told Petitioner that he hired an investigator to go to the hospital and question medical staff, "but the hospital staff dodged the investigator." [Doc.

1-2 at ¶ 45]. Petitioner claims that Jordan told him that he could accomplish the same thing as a suppression hearing at trial by questioning subpoenaed medical staff on the stand. [Id. at ¶ 46]. Finally, Petitioner asserts that, contrary to his promise, Jordan failed to cross-examine Nurse Laughlin regarding her "contradicting herself" on the stand. [Id. at ¶¶ 48-9]. Petitioner argues that he "stopped pursuing a suppression hearing" because Jordan told him he "could effect the same outcome … by putting the nurse and doctors on the stand to verify that they were instructed by the officers to go into [Petitioner's] rectum." [Doc. 1-2 at ¶ 54].

To establish ineffective assistance based on counsel's failure to file a motion to suppress, a defendant must show both deficient performance and prejudice. There is no deficient performance where counsel's determination not to litigate a motion to suppress is reasonable. See Walker v. United States, 2015 WL 4638069, at *2 (D. Md. July 31, 2015) (unpublished). In assessing reasonableness, this Court should consider whether a motion to suppress "would have had some substance," and if so, "whether reasonable strategic decisions warranted not filing the motion." United States v. Pressley, 990 F.3d 383, 388 (4th Cir. 2021) (internal quotation marks omitted). Moreover, a petitioner cannot establish prejudice unless he proves that the "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

The Fourth Amendment prohibits only unreasonable searches and seizures through governmental action. United States v. Sharpe, 470 U.S. 675, 682-83 (1985); United States v. Jacobsen, 466 U.S. 109, 113 (1984). Here, the evidence at trial showed that the rectal tone check was performed by a doctor consistent with standard practice for trauma patients like Petitioner and that the drugs were found incident to that assessment. Even if it were true that Officer Jackson

7

told medical personnel to check Petitioner's rectum, there is no showing that Petitioner's rectal tone would not have been checked (and the drugs not discovered) absent Jackson's alleged statement or that the doctor was acting pursuant to such statement rather than medical protocol. Under these circumstances, it was reasonable for Petitioner's counsel to conclude that a motion to suppress would have been fruitless where there would have been no showing that medical personnel acted on behalf of law enforcement to obtain evidence, particularly where Petitioner's sentence could have been enhanced for obstructing justice. See United States v. Shepherd, 646 F. App'x 385, 389 (6th Cir. 2016); U.S.S.G. §3C1.1. For the same reasons, Petitioner has also failed to show that his Fourth Amendment claim is meritorious or that the outcome of the trial would have been different had counsel filed a motion to suppress. See Kimmelman, 477 U.S. at 375. Moreover, the drugs found in Petitioner's buttocks area would have been inevitably discovered since Petitioner would have continued in custody after having received medical care. See United States v. Bullette, 854 F.3d 261, 265 (4th Cir. 2017). As such, Petitioner has not shown prejudice.

Finally, Petitioner claims that Attorney Jordan provided ineffective assistance by failing to cross-examine Nurse Laughlin about "contradicting herself" on the stand. Plaintiff, however, fails to identify any particular contradictions in her testimony and the Court sees none. The Court, therefore, will deny Petitioner's motion to vacate.

The Court will deny Petitioner's request for an evidentiary hearing because the parties' submissions conclusively show that petitioner is not entitled to relief, see Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970), and Petitioner's request for appointment of counsel as moot.

### IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: January 8, 2024

_____
Frank D. Whitney
United States District Judge